**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

KEVIN M. BRANDT,                          )
                                          )
                    Plaintiff,            )
                                          )
v.                                        )     Civil Action No. 3:25-cv-557–HEH
                                          )
P. KEVIN SMITH,                           )
                                          )
                    Defendant.            )

**MEMORANDUM OPINION**
**(Granting in Part and Denying in Part Plaintiff's Motion for Default Judgment)**

This matter comes before the Court on Plaintiff Kevin M. Brandt's ("Plaintiff")

Motion for Default Judgment (the "Motion," ECF No. 9) filed on September 3, 2025.

Plaintiff and P. Kevin Smith ("Defendant") entered into the Membership Interest Transfer

Agreement (the "Agreement", ECF No. 1-1) dated June 21, 2025.  Plaintiff filed his

Complaint (ECF No. 1) after Defendant failed to fulfill his obligations under the

Agreement.  After Defendant failed to appear, plead, or otherwise defend the action

within the time prescribed, the Clerk entered default ("Entry of Default," ECF No. 8) and

Plaintiff filed this Motion.  For the following reasons, the Court will grant the Motion in

part and deny the Motion in part.

**I.  BACKGROUND**

Plaintiff is the Manager of Dover Hall Enterprises, LLC (the "Company") and

owned 90% of the Company's membership interests before the parties executed the

Agreement. (Compl. ¶ 8.)  The Company owns Dover Hall, "a premiere wedding and events venue, located in Manakin-Sabot, Virginia." (*Id.* ¶ 2.)  Defendant represented himself as a "professional investor [with] the full power, authority and capacity to execute and deliver, and to perform Buyer's duties and obligations under the Agreement." (*Id.* ¶ 14; Agreement ¶ 4.)

The Agreement contained a Virginia choice of law provision and stipulated that in consideration for 10% of the Company's membership interest, Defendant would pay Plaintiff $1.2 million ("the Purchase Price"). (*Id.* ¶¶ 10, 13; Agreement ¶ 2.)  However, Defendant failed to deliver payment to Plaintiff by June 25, 2025 ("the Closing Date"). (*Id.* ¶¶ 18–19.)  Therefore, Plaintiff contends Defendant materially breached the Agreement. (*Id.* 19.)  Defendant still has not performed under the Agreement, even though he did not dispute his obligation to pay under the Agreement after the Closing Date when Plaintiff demanded payment. (*Id.* ¶ 22.)

Subsequently, Plaintiff filed his Complaint[1] against Defendant on July 17, 2025, providing the facts above and asserting Breach of Contract (Count I) and Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II). (Compl. ¶¶ 23–39.)  The Clerk issued the summons for Defendant on July 17, 2025, and Plaintiff used a private process server to personally serve Defendant on July 24, 2025. ("Summons Returned

---

[1] The Court has subject matter jurisdiction over this matter under diversity jurisdiction, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).  In the present case, Plaintiff is a citizen of Virginia, and Defendant is a citizen of the District of Columbia. (Compl. ¶¶ 6, 7.) Moreover, the amount in controversy—$1.2 million—exceeds the $75,000 threshold, exclusive of interest and costs.

Executed," ECF No. 6.)   However, Defendant failed to appear, plead or otherwise defend against the Complaint within the twenty-one (21) day period prescribed under the Federal Rules of Civil Procedure.  (Entry of Default at 1.)  Therefore, Plaintiff filed its Request for Entry of Default on August 21, 2025, which the Clerk entered on August 22, 2025. (*Id.*)

Plaintiff submitted his Motion for Default Judgment on September 9, 2025.  (ECF No. 9.)  Plaintiff contemporaneously submitted the Memorandum in Support for Default Judgment (the "Memorandum in Support," ECF No. 10) outlining the grounds for relief and the relief sought and with the Proposed Final Order (ECF No. 10-3).  Specifically, Plaintiff requests that the Court: (1) grant Plaintiff's Motion for Default Judgment; (2) enter the proposed final order submitted with the motion; (3) enter judgment in favor of Plaintiff on both counts in the Complaint and require Defendant to specifically perform the terms of the Agreement by transferring $1.2 million to Plaintiff in exchange for 10% ownership of the Company's membership interests; (4) award pre- and post-judgment interest; (5) award Plaintiff his costs and expenses, including attorney fees as outlined under the Agreement; and (6) grant other such relief that the Court deems just and proper. (Mem. in Supp. at 6.)

The Court subsequently issued an order (the "Order," ECF No. 11) on February 10, 2026, setting a Default Judgment hearing and ordering supplemental briefing on the relief requested and attorneys' fees.  In response, Plaintiff provided a supplemental brief on the issues on February 20, 2026.  ("Supp. Br.," ECF No. 12.)  The

3

Court conducted the Default Judgment hearing on March 22, 2026, to determine the basis for and amount of damages, but Defendant failed to appear.

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 55 provides a two-step process for obtaining default judgment. First, Rule 55(a) mandates that the Clerk must enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ." Fed. R. Civ. P. 55(a). When the Clerk enters default, it "prevents the defaulting party from answering or otherwise responding to the lawsuit unless the party can successfully set aside the default." *Mayrant v. Norfolk Redevelopment & Hous. Auth.*, 801 F. Supp. 3d 601, 614 (E.D. Va. 2025). A court may set aside an entry of default, upon the court finding "good cause." Fed. R. Civ. P. 55(c).

Second, the party seeking default judgment must then move for default judgment with either the Clerk or the Court. Fed. R. Civ. P. 55(b). When the party's claim is "for a sum certain or a sum that can be made certain by computation," then the Clerk may enter default judgment. Fed. R. Civ. P. 55(b)(1). However, when the moving party's claim is not for "sum certain," then the party must apply to the court for default judgment. *Id.* Even if a plaintiff asserts a computed sum of damages in his complaint, the plaintiff must claim liquidated damages for a claim to be a computed "sum certain." *Mayrant*, 801 F. Supp. at 614 (citing *Monge v. Portofino Ristorante*, 751 F. Supp. 2d 789, 794 (D. Md. 2010)).

4

A party in default concedes the factual allegations of the complaint, but "default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Courts may grant default judgment when the well-pleaded allegations in the complaint support the relief sought. *Mayrant*, 801 F. Supp. 3d at 614 (citing *Ryan*, 253 F.3d at 780).

Once a court grants default judgment, they must determine the appropriate relief. *Id.* at 615. However, unlike factual allegations, which may be taken as true, courts do not automatically deem admitted the amount of damages. *Id.* (citing *Alstom Power, Inc. v. Graham*, No. 3:15cv174, 2016 WL 354754, at *1 (E.D. Va. Jan. 27, 2016)). Thus, the courts are required to "make an independent determination regarding damages" through relying on affidavits or documental evidence in the record. *Wilcox v. Transmodal Sols., LLC*, 473 F. Supp. 3d 574, 584 (E.D. Va. 2020) (quoting *PharMerica East, LLC v. Healthlink of Va. Shores, LLC*, No. 2:19cv456, 2020 U.S. Dist. LEXIS 30348, at *6 (E.D. Va. Feb. 20, 2020)). Notably, "'a court maintains discretion over how the amount of damages may be appropriately shown.'" *Mayrant*, 801 F. Supp. 3d at 615 (citing *U.S. Workboats, Inc.*, No. 2:21cv181, 2021 WL 8445262, at *4 (E.D. Va. Sept. 17, 2021)).

### III. ANALYSIS

Plaintiff correctly asserts that the first step necessary pursuant to Rule 55 has already been satisfied in this case. (Mem. in Supp. at 3–4.) Indeed, Plaintiff submitted proof of personal service on Defendant on July 18, 2025, at his home address in

5

Washington D.C. (Summons Returned Executed at 1.) The Clerk also entered default on August 22, 2025, sixteen (16) days after Defendant's answer to the Complaint was due under Federal Rule of Civil Procedure 12(a)(1)(A)(i). (Mem. in Supp. at 3.) Defendant has yet to respond to the Complaint, and it has been more than seven (7) months since the Clerk's entry of default. In addition, Defendant was mailed a copy of the Court's Order setting a hearing on the Motion. (ECF No. 11.) Accordingly, even though Defendant has not argued that the entry of default should be set aside, the Court finds there is no good cause to do so.[2]

## A. Personal Jurisdiction

Although the Court of Appeals for the Fourth Circuit has not determined when a court must examine whether a court has personal jurisdiction over a defendant when analyzing a motion for default judgment, "'any judgment entered against a defendant over whom the Court does not have personal jurisdiction is void.'" *Aerotek, Inc. v. Bernard Irby Inc.*, 670 F. Supp. 3d 230, 232 (D. Md. 2023) (quoting *Gonzalez v. Spunk Indus., Inc.*, Civ. No. ELH-18-2935, 2019 WL 4392951, at *2–3 (D. Md. Sept. 13, 2019)). Thus, "[p]ersonal jurisdiction is a prerequisite to a court's power to enter a default judgment against a defendant." *Carmax Enter. Servs., LLC v. Precision Glob. Med. Distributors, LLC*, No. 3:22CV463, 2024 WL 68551, at *5 (E.D. Va. Jan. 5, 2024).

---

[2] Defendant submitted a *pro se* letter via email to the Court and Plaintiff's counsel on March 21, 2026, requesting a continuance and for leave to obtain counsel. However, this letter arrived less than forty-eight (48) hours before the default judgment hearing scheduled on March 23, 2026. Accordingly, the letter was not docketed by the Clerk. Therefore, the letter was not considered for the purposes of this analysis.

In civil actions, "personal jurisdiction requires either (1) specific jurisdiction 'based on conduct connected to the suit' or (2) general jurisdiction based on 'continuous and systematic' activities in the forum state. *Cadence Bank, N.A. v. DRAAM, Corp.*, No. 2:24CV305, 2025 WL 1564799, at *4 (E.D. Va. Jan 10, 2025) (quoting *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012)).

"General personal jurisdiction requires 'continuous and systematic' contacts with the forum state, such that a defendant may be sued in that state for any reason, regardless of where the relevant conduct occurred." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Here, general personal jurisdiction does not exist, because Defendant's domicile is the District of Columbia and nothing in the Complaint indicates that Defendant has continuous and systematic contacts with Virginia. (Compl. ¶¶ 6, 9.) Thus, the Court must examine whether the court has specific personal jurisdiction.

Courts use a two-step inquiry to determine whether specific personal jurisdiction exists over a non-resident defendant. *Transact Cap. Partners, LLC v. Alternative Staffing Inc.*, No. 3:23CV107-MHL, 2023 WL 5167006, at *5 (E.D. Va. July 15, 2023) (citing *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003)). A court must first determine whether the long-arm statute of the state permits the exercise of the jurisdiction. *Id.* (citing *Carefirst of Maryland, Inc.*, 334 F.3d at 397). Second, a court must determine that the exercise of specific personal jurisdiction

7

over the defendant comports with the Due Process Clause of the Constitution. *Id.* (citing *Carefirst of Maryland, Inc.*, 334 F.3d at 397).

Virginia's long-arm statute states that "[a] court may exercise [specific] personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth." Va. Code Ann. § 8.01-328.1(A)(1). Additionally, Virginia's long-arm statute has been held to extend specific personal jurisdiction to the limits of due process. *Lockwood Bros. v. Arnold Speditions GmbH*, 453 F. Supp. 2d 928, 932 (E.D. Va. 2006). Therefore, "[b]ecause subsection (A)(1) 'extend[s] personal jurisdiction to the extent permissible under the due process clause, . . . the statutory inquiry merges with the constitutional inquiry.'" *Transact Cap. Partners, LLC*, 2023 WL 5167006, at *5 (citing *People Exp. Airlines, Inc. v. 200 Kelsey Assocs., LLC*, 922 F. Supp. 2d 536, 542 (E.D. Va. 2013)).

"The Due Process Clause of the Fourteenth Amendment requires that a defendant 'have certain minimum contacts with [the forum state] such that the maintenance of a suit does not offend 'traditional notions of fair play and substantial justice.'" *Carmax Enter. Servs., LLC*, 2024 WL 68551, at *7 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Thus, "[t]he Fourth Circuit has adopted a three-part inquiry for analyzing whether specific jurisdiction exists and comports with due process, requiring courts to consider: '(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activity in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction

8

would be constitutionally reasonable.'" *Id.* at *7 (quoting *Consulting Eng'rs Corp v. Geometric, Ltd.*, 561 F.3d 278, 273 (4th Cir. 2009)).

Here, Plaintiff contends that Defendant entered into the Agreement, which is governed by the laws of Virginia to buy part of a Virginia business that operates in Virginia. (Compl. ¶ 6; Agreement ¶ 10.) Thus, the Complaint establishes that Defendant purposefully availed himself to the jurisdiction of Virginia. *See Lockwood Bros.*, 453 F. Supp. 2d at 933 (holding that a foreign corporation personally availed themselves to the laws of Virginia when: (1) the corporation entered into a contract with a Virginia corporation; (2) the contract contained a Virginia choice of law provision; (3) the corporation's representatives signed and negotiated the contract in Virginia; and (4) the representatives continued frequent contact with the Virginia corporation after signing the Agreement).

Defendant's contacts with Virginia also form the basis of Plaintiff's claims. Indeed, Defendant's contacts—i.e., entering a contract governed by the laws of Virginia to purchase a membership interest in a Virginia limited liability corporation that transacts business in Virginia, and Defendant's failure to perform in accordance with the terms of the Agreement—are the very reason the present case is before the Court.

Lastly, the exercise of jurisdiction over Defendant is constitutionally reasonable. This inquiry "'ensure[s] that litigation is not so gravely difficult and inconvenient' as to place the defendant at a 'severe disadvantage in comparison to his opponent.'" *See Mut. Fire Ins. Co. v. Menozzi Luigi & C. S.p.A.*, 92 F. Supp. 3d 435, 444 (E.D. Va. 2015) (quoting *CFA Inst.*, 551 F.3d at 292). Here, Defendant faces a minimal burden litigating

9

in the forum compared to the Virginia interest in adjudicating the dispute and Plaintiff's interest in obtaining convenient and effective relief.

Accordingly, the facts, as Plaintiff provided in the Complaint, establish that Defendant purposefully availed himself of the benefits and protection of Virginia law, the Agreement forms the basis of Plaintiff's claims, and the exercise of jurisdiction is constitutionally reasonable. Therefore, the Court's exercise of personal jurisdiction over Defendant is valid under the Virginia long-arm statute and comports with the Due Process Clause of the Constitution.

### B. Default Judgment

"The principles surrounding court review of contracts are well-settled." *Wilson v. Holyfield*, 313 S.E.2d 396, 398 (Va. 1984). "It is the function of the court to construe the contract made by the parties, not to make a contract for them. The question for the court is what did the parties agree to as evidenced by their contract." *Id.* (citing *Meade v. Wallen*, 311 S.E.2d 103, 104 (Va. 1984)). If the terms within a contract are "clear" and "unambiguous" the contract is to be construed under its plain meaning. *Id.*

#### i. Count One - Breach of Contract

Under Virginia law, the elements of a breach of contract action are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Squire v. Va. Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)). Additionally, "offer, acceptance and consideration must exist to form a valid contract." *Melo v. Zumper, Inc.*, 439 F. Supp. 3d

683, 696 (E.D. Va. 2020) (citing *Snyder-Falkinham v. Stockburger*, 457 S.E.2d 36, 39 (Va. 1995)).

In the present case, Plaintiff provided factual allegations establishing that an offer was presented to Defendant, and Defendant accepted said offer as evinced by his signature on the Agreement. (Compl. ¶ 3.; Agreement at 8.) The Agreement also contained valid consideration—$1.2 million in exchange for 10% membership interest in the Company. (Compl. at 3; Agreement ¶¶ 2, 25.) Therefore, the Agreement is a legally enforceable contract under Virginia law.

Plaintiff has also correctly asserted that Defendant materially breached the Agreement. (Compl. ¶ 19.) Defendant failed to perform his obligation under the Agreement when he failed to provide $1.2 million to Plaintiff by the Closing Date. (*Id.*) Plaintiff also granted Defendant twenty-two (22) days to cure this breach before he filed the Complaint, and Plaintiff continued to request payment, at which time Defendant "never disputed his obligation." (*Id.* ¶ 22.) Moreover, Defendant still has failed to perform or contest his obligation more than eight months after the Closing Date. (*Id.*; Mem. in Supp. at 3.) Accordingly, Defendant has materially breached the Agreement and failed to cure his breach.

Lastly, Plaintiff properly pleaded that he suffered damage from Defendant's breach of the Agreement. Here, Plaintiff asserted that Defendant's failure to perform his obligations under the Agreement resulted in Plaintiff being deprived of the Purchase Price—$1.2 million. (Compl. ¶¶ 29, 38; Mem. in Supp. at 4.)

11

Therefore, because Plaintiff has adequately pleaded a breach of contract claim upon which relief can be granted, the Court will grant Plaintiff's Motion for Default Judgment as to Defendant's liability on Plaintiff's breach of contract claim.

### ii. Count Two – Breach of Contract Implied Covenant of Good Faith and Fair Dealing

"A claim for implied covenant of good faith and fair dealing under Virginia law requires: '(1) a contractual relationship between the parties, and[,] (2) a breach of the implied covenant.'" *Coon v. Fannie Mae*, No. 3:18-cv-108, 2019 U.S. Dist. LEXIS 108210, *11 (E.D. Va. June 27, 2019) (quoting *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009)). However, a breach of this implied duty is not a separate tort, but rather "gives rise only to a cause of action for breach of contract." *Id.* (quoting *Smith v. Flagstar Bank, F.S.B.*, No. 3:14cv741, 2015 U.S. Dist. LEXIS 32809, 2015 WL 1221270, at *6 (ED. Va. Mar. 17, 2015)).

Here, Plaintiff properly alleged a violation of good faith and fair dealing, because, as discussed above, the Agreement established a legally binding contractual obligation and Defendant failed to satisfy his obligations under the Agreement. (Compl. ¶ 37.) Therefore, the Court will grant Plaintiff's Motion for Default Judgment as to Defendant's liability on Plaintiff's breach of the implied covenant of good faith and fair dealing claim.

### C. Requested Relief

Plaintiff requests the Court enter default judgment against Defendant and award various remedies, including: (1) ordering Defendant specifically perform his obligations under the Agreement to provide Plaintiff $1.2 million in exchange for a 10% membership

12

interest in the Company; (2) awarding prejudgment and post-judgment interest; and (3) awarding Plaintiff his costs and expenses including attorneys' fee associated with this litigation.  (Mem. in Supp. at 6.)

### i. Specific Performance

Under Virginia law, "'[t]he decision whether to award specific performance of a contract rests in the sound discretion of a trial court; it is not a matter of right.'" *Cangiano v. LSH Bldg. Co.*, 623 S.E.2d 889, 894 (Va. 2006) (quoting *Shepherd v. Davis*, 547 S.E.2d 514, 523 (Va. 2003)).  Although specific performance generally is not a proper remedy in a case involving the sale of personal property—including stock—the Court may order specific performance when the stock is not readily purchasable in the market and its pecuniary value is uncertain and not easily ascertainable because there exists no adequate remedy at law. *Dominick v. Vassar*, 367 S.E.2d 487, 489–90 (Va. 1988); *Hamlet v. Hayes*, 641 S.E.2d 115, 118–19 (Va. 2007).  Moreover, specific performance is particularly appropriate when the agreement is valid and explicitly calls for specific performance as a remedy. *See Noel Crane Sys. GmbH v. Noell Crane & Serv.*, 677 F. Supp. 2d 852, 879 (E.D. Va. 2009) (awarding specific performance as a remedy when the contract called for it because "Virginia courts have held that agreements requiring specific performance upon breach are enforceable.").  However, specific performance "may be granted or refused under established equitable principles and the facts of a particular case" and the judge's discretion "must be exercised with a

13

view toward the substantial justice of the case." *Chesapeake Builders v. Lee*, 492 S.E.2d 141, 145 (Va. 1997) (citing *Millman v. Swan*, 127 S.E. 166, 168 (Va. 1925)).[3]

In the event of a breach or default, the Agreement explicitly calls for the remedy of specific performance. (Agreement ¶ 14.) In particular, the Agreement states that should one party fail to perform his obligations, the aggrieved party shall have the right to enforce his rights "by an action or actions for damages but also by an action or actions for specific performance, injunctive and/or equitable relief." (*Id.*)

The Membership Interest is also not readily purchasable on the market and its pecuniary value is uncertain and not easily ascertainable. (Br. in Supp. at 4.) Indeed, Defendant acknowledged this fact when he signed the Agreement because it contained the provision in paragraph one stating, "there is no ready and existing market for the Membership Interests." Furthermore, the Agreement explicitly states that the value of "the rights created by this Agreement are unique" and that, in the event of a breach, "irreparable harm would be caused, money damages may be inadequate, and an aggrieved party may have no adequate remedy at law." (Agreement ¶ 14.)

Moreover, enforcement of the very obligation Defendant agreed to perform is not inequitable to the Defendant. Indeed, the Agreement stated that Defendant "must bear the economics associated with the Membership Interest for an indefinite period of time

---

[3] *See also City of Manassas v. Bd. of Cnty. Supervisors*, 458 S.E.2d 568, 572 (Va. 1995) (stating that specific performance should be granted when a court determines that a contract is complete and certain, and circumstances do not "indicate that its enforcement would be inequitable to a defendant, but will work injury and damage [to the plaintiff] if it should be refused.").

because there is no ready and existing market for the Membership Interests." (Agreement ¶ 1.) Thus, it is not unfair to require Defendant to perform his contractual duties. Rather, were the remedy of specific performance refused, it will work to damage Plaintiff, as there is no complete or adequate remedy at law for Defendant's failure to abide by his obligations under the terms of the Agreement. *See City of Manassas*, 458 S.E.2d at 572; *Hamlet*, 641 S.E.2d at 118. With this in mind, substantial justice weighs in favor of the Court granting specific performance in favor of Plaintiff.

Accordingly, after reviewing the totality of the circumstances, the Court orders Defendant to specifically perform his obligations as outlined within the Agreement, whereby Defendant will provide $1.2 million to Plaintiff in return for a 10% ownership interest in the Company.

### ii. Prejudgment Interest

Plaintiff also requests that the Court award prejudgment interest on any granted monetary relief. (Compl. at 6; Mem. in Supp. at 5–6.) Because this action comes before the Court under diversity subject matter jurisdiction, "Virginia law governs the award of prejudgment interest." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 633 (4th Cir. 1999). Thus, Virginia Code § 8.01-382 states that the Court "may provide for interest on any principal sum awarded, or any part thereof, and fix the period at which the interest shall commence." Va. Code. Ann. § 8.01-382. The purpose of prejudgment interest is "to compensate the plaintiff who has been without relief for an extended period of time." *Gill v. Rollings Protective Serv. Co.*, 836 F.2d 194, 198 (4th Cir. 1987) (citing *Beale v. King*, 204 Va. 443, 132 S.E.2d 476 (1963)).

15

Under Virginia law, "although the award of prejudgment interest is discretionary, it is still a part of the actual damages sought to be recovered." *Anderson v. Ford Motor Co.*, No. 3:22-cv-758, 2024 U.S. Dist. LEXIS 139282, *12 (E.D. Va. Aug. 6, 2024) (citing *Devine v. Buki*, 767 S.E.2d 459, 468 (Va. 2015)). Therefore "prejudgment interest, like other damages, must be requested in a pleading before it can be awarded by a trial court." *Id.* Additionally, "[a] district court 'must weigh the equities in a particular case to determine whether an award of prejudgment interest is appropriate.'" *United States for Use & Benefit of McKenny's, Inc. v. Leebcor Servs., LLC*, 622 F. Supp. 3d 165, 176 (E.D. Va. 2022) (quoting *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 727 (4th Cir. 2000)).

> Underlying a court's weighing of the equities are two competing rationales, the first weighs in favor of granting prejudgment interest while the second cautions against its award. The first is a notion that the party, denied use of money to which it is rightfully entitled, should be compensated for that loss, and full compensation includes interest. By contrast, under the second rationale, some courts are reluctant to award prejudgment interest when the legal dispute is bona fide.

*Wells Fargo Equip. Fin., Inc. v. State Farm Fire & Cas. Co.*, 8823 F. Supp. 2d 364, 366–67 (E.D. Va. 2011) (footnotes omitted). Accordingly, for the Court to conclude prejudgment interest is appropriate, (1) Plaintiff must have requested the award in its pleading and (2) the equities must way in favor of the award.

Although, Plaintiff requested the award of prejudgment interest in the Complaint, Plaintiff retained the 10% ownership interest in the Company for the pendency of this litigation. Thus, Plaintiff benefited from the profits associated with the ownership of this membership interest, and that may equal the amount of prejudgment interest Plaintiff

16

requests. *See Hewitt v. Hutter*, 432 F. Supp. 795, 800 (W.D. Va. 1977), aff'd, 574 F.2d 182 (4th Cir. 1978) (holding that prejudgment interest was not appropriate when the plaintiff sought specific performance for the land contract partly because the plaintiff retained possession of a valuable farm and "the reasonable rents and profits and possession of such a desirable cattle farm and mansion house should equate with reasonable interest."). Accordingly, the Court, in its discretion, determines that an award of prejudgment interest is not appropriate, as the equities weigh against issuing the award.

### iii. Post-judgment Interest

Plaintiff requests that the Court award post-judgment interest. (Compl. at 6; Mem. in Supp. at 5–6.) A court shall allow post-judgment interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1031 (4th Cir. 1993) (stating that "[i]n contrast to the district court's discretion in the awarding of prejudgment interest, federal law mandates the awarding of postjudgment interest"). Awarding post-judgment interest is appropriate to ensure Plaintiff receives the proper value under the Agreement, regardless of when Defendant provides the Purchase Price to Plaintiff. *See Michael Grecco Prods., Inc. v. Black Connections LLC*, No. 3:23CV516, 2025 WL 1646775, at *16 (E.D. Va. June 10, 2025). Accordingly, the Court awards post-judgment interest on the Purchase Price calculated in accordance with 28 U.S.C. § 1961.

17

#### iv. Attorneys' Fees and Costs

Plaintiff seeks recompense of his attorneys' fees and costs associated with this action. (Compl. at 6; Mem. in Supp. at 5.) As previously mentioned, Virginia contract law governs the Agreement, and thus the Court must review the provisions within the Agreement concerning attorneys' fees and costs under Virginia law. *Evodc, LLC v. Reliant Mgmt. Consultant, L.L.C.*, No. 1:23cv678, 2024 U.S. Dist. LEXIS 94794, at *23 (E.D. Va. Feb. 26, 2024) (citing *Western Insulation, LP v. Moore*, 362 F. App'x 375, 379 (4th Cir. 2010)). Virginia courts apply the American Rule when awarding attorney's fees, which generally bars a prevailing party from recovering attorney's fees from the losing party. *Id.* (citing *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 49 (Va. 2006)). "'However, parties are free to draft and adopt contractual provisions shifting the responsibility for attorneys' fee to the losing party in a contract dispute.'" *Id.* (quoting *Ulloa*, 624 S.E.2d at 50).

In this case, the language in the Agreement is consistent with a "fee-shifting provision." (Agreement ¶ 12.) The Agreement states that "the prevailing party shall be entitled to recover from the other party any and all costs and expenses, including attorneys' fees, arising from and related to the suit, action, or proceeding." (*Id.*) The Agreement further stipulates that the Court shall determine the prevailing party upon "an assessment of which party's argument or positions could fairly be said to have prevailed over the other party's arguments or positions on major disputed issues." (*Id.*)

The Court must determine the meaning of words within provisions of a contract using their "usual, ordinary, and popular meaning." *D.C. McClain, Inc. v. Arlington*

18

*Cnty.*, 452 S.E.2d 659, 662 (Va. 1995). In keeping with these principles of contractual interpretation, Defendant must reimburse Plaintiff for his reasonable attorneys' fees and costs of litigating his claims against Defendant in this case based on the fee shifting provision of the Agreement. First, the Complaint contains two allegations—Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing—that are "action[s] . . . arising from [the] Agreement." (Agreement ¶ 12.) Arguably, Plaintiff has already prevailed in this controversy, because the Court entered default judgment in favor of Plaintiff and has awarded Plaintiff the relief he requested.

Under Virginia law, when a contract provides for attorneys' fees, but fails to specify the amount, "'a fact finder is required to determine from the evidence what are reasonable fees under the facts and circumstances of the particular case.'" *Airlines Reporting Corp. v. Sarrion Travel, Inc.*, 846 F. Supp. 2d 533, 536 (E.D. Va. 2012) (citing *Mullins v. Richlands Nat'l Bank*, 403 S.E.2d 334, 335 (Va. 1991)). Therefore, the party requesting attorneys' fees must establish that both the attorneys' rates and the number of hours spent are reasonable given the particular facts and circumstances of the case. *Dewberry Eng'rs, Inc. v. Dewberry Grp., Inc.*, No. 1:20-cv-00610, 2022 U.S. Dist. LEXIS 246037, *6–7 (E.D. Va. July 29, 2022).

The Supreme Court of Virginia has stated that the fact finder may consider various factors to determine whether fees are reasonable.[4] *Airlines Reporting Corp.*, 846 F. Supp.

---

[4] Those factors include "'the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar

19

2d at 536. Although Virginia Law governs, the Court may also consult federal law governing the reasonableness of attorneys' fees "to the extent it is a 'persuasive, nonconflicting guide in interpreting reasonable fees under Virginia law.'" *Id.* at 537 (quoting *GE Supply, a Div. of General Elec. Co. v. Thomas*, 62 F.3d 1414, at *7 [published in full-text format at 1995 U.S. App. LEXIS 22680] (4th Cir. 1995) (unpublished table opinion)).

In calculating reasonable attorney's fees, the Fourth Circuit directs District Courts to "first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)). Furthermore, the Fourth Circuit provides twelve factors in determining the reasonable number of hours and rate:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id.* (citing *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). While courts have discretion in determining attorneys' fees, "there must be evidence supporting

---

services, and whether the services were necessary and appropriate.'" *Airlines Reporting Corp.*, 846 F. Supp. 2d at 536 (quoting *Chawla v. BurgerBusters, Inc.*, 499 S.E.2d 829, 833 (Va. 1998)).

the reasonableness of these fees." *United Mktg. Solutions, Inc. v. Fowler*, No. 1:09-cv-1392, 2011 WL 837112, at *4 (E.D. Va. Mar. 2, 2011).

In the Memorandum in Support, Plaintiff attached (1) a detailed accounting of the hours spent on and costs associated with specific tasks related to this matter, an account of court costs associated in pursuing this matter (the "Fees and Costs," ECF No. 10-1, Ex. A), and a declaration of Plaintiff's attorney—Mr. DuBoff—in support of his requested attorneys' fees and costs ("DuBoff's Declaration," ECF No. 10-1). Plaintiff also submitted two supplemental invoices for attorneys' fee incurred after Plaintiff submitted the Fees and Cost Attachment. ("Fees and Cost Suppl.," ECF No. 14-2.)

In total, Plaintiff requests the Court award Plaintiff's attorneys' fees in the amount of $39,078.90 and costs in the amount of $555.00. (DuBoff's Declaration ¶ 6; Fees and Cost Suppl. at 2, 5.) These invoices includes billed hours for a partner, associate, paralegal, and timekeeper totaling of 44.5 hours on the matter. (Fees and Costs at 1; Fees and Cost Suppl. at 2, 5.) The costs include a $405.00 filing fee and a $150.00 fee for private process server. (Fees and Costs at 5.)

The Court will first examine whether the rates charged are reasonable for the partner, associate, and professional staff. For DuBoff, Plaintiff requests fees of 8.1 hours at a rate of $1,089.00 for the first two invoices and 3.7 hours billed at a rate of $1,237.50, totaling $13,399.65. (Fees and Cost at 1; Fees and Cost Suppl. at 2, 5.) Plaintiff also requests reimbursement for attorney Mr. Woolard's fees for 21.7 hours at a rate of $904.50 for the first two invoices and 2.4 hours billed at a rate of $1,080.00, totaling $22,219.65. (*Id.*) Comparatively, Plaintiff requests reimbursement of paralegal Ms.

21

Powell's fees for 8.4 hours at a rate of $405.00 and a timekeeper's fee for 0.2 hours at a rate of $288.00, totaling $3,459.60. (*Id.*)

In support of the reasonableness of the attorneys' rates, Plaintiff provides some information on each of the parties to assist the Court. For example, in his declaration, Mr. DuBoff states he is a partner in the law firm McGuireWoods LLP ("McGuireWoods") in the Richmond, Virginia, office and has practiced law for more than ten years. (DuBoff's Declaration at 1.) Moreover, before joining McGuireWoods, DuBoff spent six years active duty as a United States Marine Corps Judicial Advocate and clerked for a judge in the Third Circuit. (*Id.*) The declaration also states that Mr. Woolard is an associate in the law firm McGuireWoods in the Richmond Office and has practice for roughly six years. (*Id.* at 1–2.) Furthermore, Mr. Woolard clerked for judges in the Fifth Circuit and the Northern District of Alabama, before joining McGuireWoods in 2020. (*Id.*) However, key indications—i.e., years specifically practicing in the Eastern District of Virginia, the amount of attorney fees awarded in other cases, and reasonable fee rates from other cases involving similar complexity—were noticeably absent in the declaration. *See Plyer v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (stating that "[i]n addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.) (citation omitted). Thus, the Court must determine a reasonable fee based upon previous cases.

Experienced attorneys have been awarded attorneys' fees with hourly rates ranging from $600.00–$750.00 per hour. *See SS Richmond LLC v. Harrison*, No. 3:22-

cv-405, 2023 WL 7646505, at *7 (E.D. Va. Nov. 14, 2023) (awarding $650 for partners and $400 for associates); *Bethune-Hill v. Va. State Bd. of Elections*, No. 3:14-cv-852, 2020 WL 5577824, at *10 (E.D. Va. Sept. 17, 2020) (awarding $750 for partners and $410 for associates).

Here, the Court determines that a reasonable rate for Mr. Duboff is $850.00 per hour and Mr. Woolard is $550.00 per hour, based upon the similar fee awards for partners and associates respectively in the Eastern District of Virginia. Similarly, the Court determines that the reasonable fee for Ms. Powell is $250.00 per hour based upon previous determinations in the Eastern District of Virginia.

Since the Court has determined the reasonable rates for fees, the Court must now determine the reasonableness of the total number of hours billed. In total, Mr. Duboff and Mr. Woolard billed a total of 35.9 hours on various tasks including: (1) background research on the matter; (2) drafting the Complaint, order for the Clerk's entry of default, Motion for Default Judgment, and Supplemental Brief; and (3) research on subsequent collection methods. (Fees and Cost at 2–4; Fees and Cost Suppl. at 2, 5.) After considering the effort expended, the amount in controversy, and the results obtained, the Court concludes that the numbers of hours the attorneys expended on these tasks are reasonable.

Comparatively, the Court must now examine the reasonable number of hours billed for the professional staff. The Court must exclude some of Ms. Powell's fees and all the timekeeper's fees, because "'purely clerical tasks are ordinarily a part of a law office's overhead,' and 'should not be compensated for at all.'" *Kelly v. Altria Client*

23

*Servs., LLC*, 3:23-cv-725-HEH, 2025 U.S. Dist. LEXIS 154839, *18 (E.D. Va. Aug. 11, 2025) (quoting *Two Men & a Truck/Int'l, Inc. v. A Mover Inc.*, 128 F. Supp. 3d 919, 929 (E.D. Va. 2015)).  Moreover, many of Ms. Powell's fee entries contain block entries, or the "lumping" together of tasks into a single entry without adequately specifying the amount of time spent on each task.  *Two Men & a Truck/Int'l, Inc.*, 128 F. Supp. at 925 (citing *Project Vote/Voting for America Inc. v. Long*, 887 F. Supp. 2d 704, 716 (E.D. Va. 2012)).  Block billing "simply does not provide the court with a sufficient breakdown to meet [the party's] burden to support its fee request in specific instances." *Project Vote/Voting for America Inc.*, 887 F. Supp. 2d at 716.

Plaintiff requests fees for Ms. Powell performing purely clerical tasks.  The full list of Ms. Powell's tasks contained in the invoices are:

> 1.) July 21, 2025: "Call and emails with J. Woolard and Capitol Process Servers and preparation regarding personal service of Complaint and Summons on P. K. Smith in Washington D.C." (1.1 hours)
>
> 2.) July 22–23, 2025: "Emails with J. Woolard and Capitol Process Servers regarding personal service of Complaint and Summons on P. K. Smith in Washington, DC." (1.5 hours)
>
> 3.) July 24, 2025: "Emails with J. Woolard and Capitol Process Servers regarding personal service completion of Complaint and Summons on P. K. Smith in Washington, DC." (1.5 hours)
>
> 4.) July 25, 2025: "Review case emails, prepare Summons returned Executed, file same with court via ECF; review, pull and update case pleadings files." (1.5 hours)
>
> 5.) August 5, 2025: "Review and prepare emails regarding invoicing for process service of K. Smith, review case status." (0.3 hours)

6.) August 21, 2025: "Prepare Plaintiff's Request for Entry of Default with Declaration attached and efile with court; prepare copy and send via U.S. mail to defendant K. Smith; update case files" (1.6 hours)

7.) September 3, 2025: "Call with J. Woolard and citecheck/proofread Memo in Support of Motion for Default Judgment, file same in court and have copy mailed out via U.S. Mail to defendant." (2.4 hours)

(Fees and Cost at 2–4; Fees and Cost Suppl. at 2, 5.)

After a review of these entries, the Court concludes that those entries on July 21–24 and August 5, 2025, are purely clerical tasks that will not be compensated for at all. *See Zhang v. GC Servs., LP*, 537 F. Supp. 2d 805, 815 (E.D. Va. 2008) (holding that tasks such as locating a process server, preparing service copies of the complaint, and filing return of service with the court were all clerical tasks that were not to be compensated). Similarly, fees for a timekeeper's entry for "[r]eview Servicemembers Civilian Relief Act report for [Defendant]" is a purely clerical task that Plaintiff will not be compensated for. (Fees and Cost at 3.)

Part of the entries on July 25, August 21, and September 3, 2025, partly contain clerical tasks, too. (Fees and Cost at 3–4; Fees and Cost Suppl. at 2.) However, Ms. Powell's tasks in reviewing case emails, preparing the Request for Entry of Default, and cite checking and proofreading the Memo in Support of Default Judgment are not clerical tasks. Because Ms. Powell's entries on these dates lump together clerical tasks with tasks that are compensable without providing the hours she expended on each task, the Court will reduce the number

25

of hours. Accordingly, the Court determines that 2.5 hours of these entries are compensable.

Thus, the Court finds Defendant shall reimburse Plaintiff for his costs and reasonable attorneys' fees computed as follows: DuBoff's and Woolard's fees of $23,285.00 and Ms. Powell's fees of $625.00, totaling $23,910.00 in attorneys' fees. Additionally, the costs associated in pursuing the litigation include $555.00. (Fees and Cost at 5.) Accordingly, Defendant must reimburse Plaintiff $24,465.00 for costs and attorneys' fees in accordance with the Agreement.

## IV. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Plaintiff's Motion for Default Judgment (ECF No. 9). First, the Court will order that default judgment be entered against Defendant. Second, the Court will order Defendant to specifically perform his obligations under the Agreement, whereby Defendant will provide $1.2 million to Plaintiff, and Plaintiff will provide a 10% ownership interest in Dover Hall Enterprises, LLC. Third, the Court will deny Plaintiff's request for prejudgment interest on the $1.2 million payment. Fourth, the Court will order Defendant to pay Plaintiff post-judgment interest on the $1.2 million payment, to be calculated in accordance with 28 U.S.C. § 1961, accruing from the date of this Memorandum Opinion and related Final Order. Lastly, the Court will order Defendant to reimburse Plaintiff for his costs and reasonable attorneys' fees in pursuing this action against Defendant in the amount of $24,465.00, which the Court has determined reasonable.

An appropriate Order will accompany this Memorandum Opinion.

/s/

Henry E. Hudson
Senior United States District Judge

Date: April 20, 2026
Richmond, Virginia

27